IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANITA SHONTA SANDERS, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )     CIVIL ACTION NO. 11-0491-N |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant. | ) |

ORDER

In this action, plaintiff appeals the final decision of the Commissioner denying her claim for supplemental security income ("SSI"). The parties have consented to the jurisdiction of the undersigned magistrate judge (doc. 19) and this matter has been referred to the undersigned for all purposes including entry of judgment in accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 22 (doc. 20). The parties have also waived oral argument (docs. 18, 21). After careful consideration of the parties' briefs, the administrative transcript and all matters in the record, the court finds that the decision of the Commissioner is due to be AFFIRMED.

Procedural Background

Plaintiff filed an application for supplemental security income on January 26, 2009, alleging that she became disabled beginning on January 1, 1992. (Tr. 118-120). Her claims were initially denied on May 1, 2009. (Tr. 65-70). Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") which was held on December 20, 2010; plaintiff was represented by Attorney Angela Williams. The ALJ notes that, at the hearing, plaintiff amended her onset date to January 26, 2009, the date she filed her claim. (Tr. 16). The ALJ issued an unfavorable decision on January 3, 2011. (Tr. 16-26). The Appeals Council denied review (Tr.

1-5), rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed

the instant appeal.  She is represented on appeal by Attorney Quinn Brock.

<u>Facts</u>[1]

Plaintiff was 30 years old at the time of her application and 32 years old at the hearing;

she is thus categorized as a younger individual. (Tr.  25). The ALJ noted that her education was

limited.[2]  (Tr. 25).  Plaintiff worked as a cook at a convenience store, but only worked part-time

for a short period of time and, as such, these jobs were not deemed to be Past Relevant Work for

purposes of the regulations.  (Tr. 25).  Nonetheless, the ALJ determined that plaintiff could

perform jobs that exist in significant numbers in the national economy.  (Tr. 25).

Plaintiff claims disability on the basis of mental impairments of depression and anxiety,

which the ALJ determined were not "severe" impairments[3]; arthritis[4], which the ALJ determined

was not severe; and diabetes mellitus, hypertension, and right hearing loss, which the ALJ found

to be severe impairments.  (Tr. 18-19).  None of these conditions, alone or in combination, were

found to meet or exceed a listing.[5]  (Tr.  20).

Plaintiff's primary care physician was Dr. Jamil Aktar of the Marion Health Center in

Marion, Alabama.  The administrative record contains records of care by Dr. Aktar from March

---

[1] Except as otherwise noted, the facts are drawn from the ALJ's decision.

[2] Plaintiff testified that she did not complete the 10th grade and had not obtained her
[2] Plaintiff testified that she did not complete the 10th grade and had not obtained her
GED. (Tr. 44).

[3] An impairment is "severe" for purposes of social security benefit analysis if it
significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R.
§§404.1521 and 416.921.

[4] The ALJ noted that plaintiff did not raise arthritis and accompanying pain in her
application.  *See* Tr. 18 (*citing* Exhibit 5F at Tr. 194-201).

[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

22, 2005, into 2010, for numerous ailments.  (Tr.  159-181, 189-193, 236-242, 252-264, 270-275).  Dr. Aktar referred plaintiff to Dr. Osasere Aghedo, an ENT specialist, who saw plaintiff on one occasion for ear infections.  (Tr. 243-245).  In addition, plaintiff was treated by Dr. Gerold Sibanda on one occasion for numbness and/or tingling in her extremities.  (Tr. 289-290). The agency had plaintiff examined by Dr. Modi Dixitkumar for evaluation of her physical limitations.  (Tr. 197-201).

The ALJ determined that plaintiff had --

the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant [can] lift and carry 20 pounds occasionally and 10 pounds frequently; the claimant can stand/walk for 4 hours out of an eight-hour day; and the claimant can sit for 6 hours out of an eight-hour day.  The claimant's ability to push/pull is unlimited up to the lift/carry limitation; the claimant can frequently climb ramps and stairs but never ladders, ropes, or scaffolds.  The claimant has no visual or manipulative limitations.  The claimant has communications limitations only as to her right ear.  The claimant cannot work in an excessively loud environment.  The claimant can frequently perform all postural limitations except that the claimant can only balance occasionally because of her right ear condition.  The claimant should avoid concentrated exposure to extreme cold or heat, unprotected heights, dangerous moving machinery, and bodies of water.  The claimant's pain is at the mild to moderate level.  The claimant has the following non exertional limitations: the claimant is able to sustain concentration for 2 hour periods at a time to complete a normal workday at an acceptable pace and schedule; the clamant would benefit from having her own work station; the claimant may require regular, not excessive work breaks during the work day.  The claimant may be expected to miss 1 or 2 days of work per month.  The claimant is able to appropriately manage at least casual and informal contact with the general public; proximity to others should not be intensive or prolonged.  The claimant will likely be able to accept and utilize supervision and respond to appropriate levels of feedback and constructive instructions.  The claimant is able to respond to simple and infrequent changes in work routine.  Travel should be restricted to both local and familiar environments.

(Tr. 20-21) .

<u>Issues</u>

1.     Whether the ALJ's decision finding plaintiff capable of light work is supported by substantial evidence.

2.      Whether the ALJ improperly weighed the opinions of the plaintiff's treating

physician and treating specialist.

3.      Whether the ALJ improperly applied the Commissioner's pain standard.

4.      Whether the ALJ erred by finding plaintiff's impairments of arthritis, anxiety and

depression were non-severe.

<u>Legal Standard</u>

<u>Scope of Judicial Review</u>.

In reviewing claims brought under the Social Security Act, this Court's role is a limited

one.  Specifically, the Court's review is limited to determining: 1) whether the decision is

supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*,

42 U.S.C. § 405(g); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999); <u>Martin v. Sullivan</u>, 894

F.2d 1520, 1529 (11th Cir. 1990).  Thus, a court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner.  <u>Miles v. Chater</u>, 84 F.3d 1397,

1400 (11th Cir. 1996); <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  Rather, the

Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.

<u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997); <u>Chater</u>, 84 F.3d at 1400; <u>Brown v.

Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991).  *See also*, <u>Martin v. Sullivan</u>, 894 F.2d 1520,

1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual

findings, we must affirm if the decision reached is supported by substantial evidence.");

<u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence

is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant

evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In

determining whether substantial evidence exists, a court must view the record as a whole, taking

4

into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

Statutory and Regulatory Framework.

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. §  423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

5

last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process

to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920

(2010).  The Eleventh Circuit has described the evaluation to include the following sequence of

determinations:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments
> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[6]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or,
> on steps three and five, to a finding of disability. A negative answer to any
> question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* Bell v. Astrue, 2012 WL

2031976, *2 (N.D. Ala. May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1 (M.D. Ala. Jan.

17, 2012).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d

1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability

once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to

---

[6] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

the Commissioner, who must then show there are a significant number of jobs in the national

economy the claimant can perform. *Id*.

  To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual

Functional Capacity (RFC). *Id*. at 1238–39. RFC is what the claimant is still able to do despite

his impairments and is based on all relevant medical and other evidence. Id It also can contain

both exertional and nonexertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers

the claimant's RFC, age, education, and work experience to determine if there are jobs available

in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use

the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"), or hear

testimony from a vocational expert (VE). Id. at 1239–40.

<u>Analysis</u>

  1.  **The ALJ's decision finding plaintiff capable of light work is**
     **supported by substantial evidence.**

  Plaintiff urges that the ALJ's RFC determination is not supported by substantial

evidence. (Doc. 14 at 6).  Plaintiff specifically argues that there is no support for "[t]he ALJ's

contention that [she] can perform standing/walking requirement of 6 hours out of an 8 hour

workday."  (Doc. 14 at 8).   However, the record does support the ALJ's findings with respect to

Plaintiff's physical residual functional capacity. In February 2009, Dr. Dixitkumar found

Plaintiff had full strength and ranges of motion in her shoulders and arms, full strength in her

wrists, and no weakness in her fingers or hands. She had no spinal abnormalities, normal and

symmetrical muscle tone and strength, intact sensation, full dexterity without ataxia or tremor,

and a coordinated and smooth gait (Tr. 197-201). In June 2009, Dr. Aghedo found Plaintiff could

communicate normally. She found Plaintiff had normal tympanic membranes and rarely or never

misunderstood words in conversational speech (Tr. 243-45). In August 2010, Dr. Sibanda found

Plaintiff was "doing well" and had only "intermittent" stocking/glove numbness and tingling (Tr. 289-90).

Plaintiff also argues that the limitations contained in the ALJ's RFC determination concerning her ability to "stand/walk for 4 hours" and "sit for 6 hours" does not equal the requirements of light work.  (Doc. 14 at 6-7).   However, as the Commissioner notes (doc. 22 at 9), the ALJ did not find that plaintiff could perform the full range of light work, but merely a partial range with specific limitations.  *See* SSR 83-10,  1983 WL31251, at \*5-6  ("[T]he *full* range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.")(emphasis added).   In addition, contrary to Plaintiff's contention, the ALJ questioned the vocational expert as to whether or not the requirement of a sit/stand option would reduce the occupational base of work she could perform.  (Tr. 58).  Based on the limitations contained in the ALJ's hypothetical, the VE testified that there were jobs in the local and national economy which plaintiff could perform. (Tr. 59).   Thus, plaintiff's focus on the general label used by the ALJ raises no legitimate claim of error.[7]

Plaintiff further argues that, because plaintiff's treating physician, Dr. Aktar, provided the only Physical RFC assessment form, and that document stated that plaintiff could not perform light work, the ALJ's decision to the contrary was made without substantial evidence to support it.  The regulations clearly place responsibility for determining a claimant's RFC on the ALJ, 20 C.F.R. §416.946(b), and a doctor's opinion on such 'ultimate issue' is entitled to no particular weight. 20 C.F.R. §§ 404.1527(e), 416.927(e) (explaining that an opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is disabled or unable to work, is not

---

[7] As stated by the ALJ (Tr. 25), if plaintiff had been found to have had the RFC to perform the full range of light work, the ALJ could have used 'the Grids' rather than calling a vocational expert.  *See e.g.* Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995); Johnson v. Astrue, 2010 WL 724393, \*4 (M.D.Fla. February 25, 2010).

considered a medical opinion and is not given any special significance, even if offered by a treating source, but will be taken into consideration); *see* Flowers v. Comm'r of Social Sec., 441 Fed.Appx. 735, 742 n.5 (11th Cir. 2011); Lawton v. Comm'r of Social Sec., 431 Fed.Appx. 830, 834 (11th Cir. 2011); Gainous v. Astrue, 402 Fed.Appx. 472, 475 (11th Cir. 2010).  The ALJ was not required to accept Dr. Aktar's opinion on the level of work plaintiff could perform, and was not required to seek clarification of that opinion prior to making a contrary finding.

Plaintiff also argues that the ALJ's finding that Plaintiff "can only balance occasionally because of her right ear condition" (Tr. 20-21) "precludes  [Plaintiff] from performing light work because standing and walking requires balancing" (doc. 14 at 9).  However, the evidence in this record establishes that the ALJ's finding regarding plaintiff's ability to "only balance occasionally" is not inconsistent with her established ability to stand and walk.  *See e.g.*  Tr. 136 (Plaintiff's statement that "I used to walk at least a mile and back [but] only a 1/2 mile now" and the designation of "walking" as one of her hobbies.)  In addition, SSR 85-15 specifically states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, *it would not ordinarily have a significant impact on the broad world of work*." 1985 WL 56857, at *6 (emphasis added). This ruling also states that, "[w]here the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a [vocational specialist] may be necessary." *Id*.  As noted above, the vocational expert in this case addressed the ALJ's hypothetical question which included a limitation related to the balancing issue.

Plaintiff also questions the sufficiency of the evidence for the ALJ's holding that plaintiff could use her arm for grasping, holding and turning objects. The court presumes that plaintiff refers to the ALJ's holding that she "has no visual or manipulative limitations."  (Tr. 21).

Plaintiff argues that Dr. Aktar treated plaintiff for swelling of her right wrist and hand pain on August 17,2007 (Tr. 176) and for pain in her right wrist and hand on October 16, 2009 (Tr. 237). (Doc. 14 at 9).  Plaintiff adds that she was treated on August 23, 2010, by Dr. Gerold Sibanda for numbness in her arms which radiated into her hands. (*Id.*, *citing* Tr.  29).  Plaintiff further contends that Dr. Akhtar found that she could rarely grasp, twist and handle objects.  (Id., citing Tr. 234).  The Commissioner has not directly addressed this argument in his brief.  However, the ALJ obtained a consultative examination from Dr. Modi Dixitkumar, which found through testing that plaintiff had no deficiencies in the use of her arms, wrists, fingers or hands.  (Tr. 198-99). This objective medical evidence is, therefore, sufficient to support the ALJ's determination that plaintiff suffered no limitation in her ability to grasp, twist or handle objects, and it is irrelevant that Dr. Dixitkumar did not complete an RFC assessment.

For the above stated reasons, there is no merit to Plaintiff's contention that the ALJ's finding regarding her ability to perform light work is not supported by substantial evidence.  The ALJ did not commit reversible error in this matter.

2.    **The ALJ did not improperly weighed the opinions of the plaintiff's treating physician and treating specialist.**

Plaintiff next argues (doc. 14 at 10) that the ALJ erroneously assigned little weight to the opinions of plaintiff's treating physician, Dr. Aktar, and those of Dr. Osasere Aghedo, an ENT specialist who evaluated plaintiff on one occasion for her ear infections.  Their opinions are set forth in the record.  *See* Tr. 234-35, 243-45.

The regulations provide that, if a treating source opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record, the ALJ will give it controlling weight. If not, it nonetheless will be given substantial or considerable weight unless "good cause" is shown to

the contrary. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (*quoting* <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'Good cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." <u>Id.</u> (*citing* Lewis, 125 F.3d at 1440).

Plaintiff challenges the existence of 'good cause' and the ALJ's determination that the opinions contained in Dr. Aktar's Physical Capabilities Evaluation ("PCE") and Clinical Assessment of Pain forms were "conclusory, providing very little explanation of the evidence relied on in forming that opinion" and that "the opinion in question departs substantially from the rest of the evidence of record." (Tr. 24). The Commissioner does not address this challenge directly, simply stating that the ALJ cited those reasons for giving little weight to the opinion of Dr. Aktar opinions and reiterating the findings of Dr. Dixitkumar, the consultive examiner. (Doc. 22 at 11). It is the nature of the forms used by Social Security practitioners that the answers are in a check-the-box format with no explanation for the opinions reflected. *See* <u>Brown v. Comm'r of Social Sec.</u>, 42 Fed.Appx. 507, 512 (11th Cir. 2011); <u>Wilkerson ex. rel. R.S. v. Astrue</u>, 2012 WL 2924023, *3 (N.D.Ala. July 16, 2012). Dr. Aktar's records contained few objective medical observations. Consequently, the ALJ's determination that Dr. Aktar's opinions on the Physical Capacities Exam ("PCE") and Pain forms were conclusory is supported by substantial evidence, and the opinions were not entitled to controlling weight.

Additionally, Dr. Aktar's records of his treatment of plaintiff do not support Dr. Aktar's opinions as set forth in the PCE and Pain forms. There is no evidence of testing to determine how long plaintiff could stand or walk, yet Dr. Aktar opined that plaintiff could only do so for one hour out of an eight hour workday. Similarly, there is no evidence of examination or testing

11

to support his opinions on other postural and manipulative limitations or for the level of pain he claimed on her behalf.[8]  The ALJ also noted that plaintiff was no longer being treated by Dr. Aktar, undermining the continuing relationship upon which the greater evidentiary weight is normally accorded. *See* Reynolds-Buckley v. Comm'r of Social Sec., 457 Fed.Appx. 862, 864 (11th Cir. 2012) (*citing* 20 C.F.R. § 404.1502)("To qualify as a treating source, the physician must have an ongoing treatment relationship with the claimant.").

In light of the evaluation by the consultative examiner, Dr. Dixitkumar, (Tr. 197-201), who examined plaintiff for the purpose of determining her physical limitations and residual functional capacity, as well as the records of the other doctors who examined plaintiff, there appears to have been no need for the ALJ to have sought clarification of the record.  The  ALJ's decision that the administrative record contained adequate evidence to reach a determination was supported by substantial evidence.

Plaintiff was referred to Dr. Aghedo by Dr. Aktar for evaluation of her ear infections three months following Dr. Dixitkumar's evaluation.  (Tr. 243-245).  In contrast to Dr. Dixitkumar, Dr. Aghedo stated that the ear infections were 'severe,' limited normal and even essential activities, and that plaintiff was "disabled" based upon the fact that plaintiff had suffered two infections in the six months preceding his evaluation.  (Tr. 243).  However, Dr. Aghedo's described his objective evaluation  as follows:

**Otoscopic exam**:

---

[8]  In this instance, the court finds that the ALJ's musings on the potential for a doctor to provide stronger opinions to assist a patient were not dispositive but rather merely explanatory. If the ALJ's explanation had included fewer specifics, and the discussion of possible sources of bias appeared more central to the ALJ's decision, an issue may have been presented concerning the existence in the record of a basis for such findings. *See* Rezaei v. Astrue, 1:11-cv-00467-N, order dated July 20, 2012, doc. 20.

       *Right Ear - External canal - skin normal; cerumen soft and brown; *partially blocking* the canal; removed with suction; no otorrhea[9]; no foreign bodies; no masses.  Tympanic membrane translucent, normal light reflex; normal mobility to pneumatic otoscopy.
       *Left Ear - External canal  skin normal; cerumen soft and brown; *partially blocking* the canal; removed with suction; no otorrhea; no foreign bodies; no masses.  Tympanic membrane translucent, normal light reflex; normal mobility to pneumatic otoscopy.
       **Hearing**: Conversational speech rarely or never misunderstands words.

(Tr. 244).  In addition, Dr. Aghedo acknowledges that there existed no previous tests or diagnostic procedures related to plaintiff's ear issues and that he needed a "Comprehensive Audiometry Threshold Eval & Speech Recognition" as well as a "Tympanometry (Impedance Testing)" "[t]o be scheduled."  There is no evidence that he ever actually scheduled these tests or obtained their results prior to completing his written opinion.  As the ALJ noted, "there are no records that show the claimant followed up with the specialist after the first consultation." (Tr. 22).

       Also, as noted above, a doctor's opinion on the ultimate issue of disability is entitled to little weight, as such determination is not a medical opinion and is reserved to the ALJ.  See 20 C.F.R. §§ 404.1527(e), 416.927(e).  Dr. Aghedo states that plaintiff's ability to communicate is "normal" and that she rarely or never misunderstands words in conversational speech.  (Tr. 244).  Dr. Aghedo's physical examination revealed no inflammation at the time of his evaluation and he confirmed that the partial blockage of plaintiff's ear canals was relieved by suction.  (Tr. 244).  It appears from the records that the plaintiff's ear infections were transitory events which did not last for twelve months, and that the lack of limitation in her ability to communicate were adequately addressed in the RFC.  Based on the report of Dr. Aghedo,  the ALJ's determinations that "[t]he claimant has communications limitations only as to her right ear [and t]he claimant

---

       [9] "Otorrhea" refers to inflammation of the middle ear or a middle ear infection.  From Wikipedia, the free encyclopedia.

cannot work in an excessively loud environment" (Tr. 21), are not only supported by the record but appear to address the specifically described limitations related to plaintiff's ears. The ALJ was not bound to accept Dr. Aghedo's opinion, after a single evaluation, that plaintiff was disabled.

The ALJ also properly rejected Dr. Aktar's opinion as to the limitations on plaintiff's use of her hands (Tr. 234). There is no evidence of examination or testing to support Dr. Aktar's opinions on postural and manipulative limitations of the plaintiff or for the level of pain he claimed on her behalf. Although Dr. Dixitkumar saw plaintiff only once, his evaluation showed that plaintiff had no loss of use of her upper extremities. Plaintiff has not sought or argued for a closed period of disability. The ALJ's decision to rely on Dr. Dixitkumar's evaluation is not reversible error.

     3.     **The ALJ properly applied the Commissioner's pain standard**.

Plaintiff next argues that the ALJ erred in applying the standard for evaluation of subjective complaints of pain. "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

Plaintiff's challenge focuses on the ALJ's reliance on plaintiff's activities of daily living as a basis for his decision not to fully credit her pain testimony. The ALJ acknowledged that the plaintiff had shown the existence of a medical condition which could be expected to produce pain. The ALJ held, however, that "the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."  Doc. 13 at 23.

Plaintiff argues that, because she testified at the hearing that she relied on her mother for childcare, cooking and cleaning, her testimony should preclude a finding that plaintiff herself did those chores.  However, in choosing not to fully credit plaintiff's testimony concerning her pain, the ALJ pointed to several factors affecting plaintiff's credibility, namely: that plaintiff does not see a physician specifically for her alleged arthritis pain; that she reports that she cannot afford to see a doctor for her back pain;  that she did not list arthritis as one of her allegedly disabling impairments on her application and did not bring it up during her consultative examination; that she takes a muscle relaxer and over-the-counter medication; and that, although at the hearing she described her pain level to be as high as seven out of ten, the record evidences that plaintiff did not frequently complaint of pain to her treating physician during her frequent doctor visits for medication refills.  (Tr. 22).  The ALJ also noted that, despite plaintiff's contention that she suffers limiting pain, "[she] has not taken any narcotic based pain relieving medications."  (Tr. 23).

The ALJ also addressed plaintiff's activities of daily life. (Tr. 23).  Plaintiff testified at the hearing that she relied on her mother to help with the care of her young children as well as household chores and cooking.   (Tr. 48-49).  However, at the consultive examination, she reported that her mother helped with the children and cooking, but that plaintiff took care of them when her mother was at work.  (Tr. 205). Further, in forms submitted to the agency, she reported her daily activities as waking up and getting the children dressed and fed, washing dishes, vacuuming, reading and watching television, going for a walk, cooking simple meals, helping her children with their homework, and getting them ready for bed.  (Tr. 132-138).

The ALJ also pointed to plaintiff's minimal work history prior to her claimed disability as evidence, which raised questions in his mind about the real reason for plaintiff's lack of employment.  (Tr. 23).  The ALJ specifically observed that plaintiff's sporadic wok history prior to the alleged onset of disability, "raises a question as to whether claimant's continuing umemployment is actually due to medical impairments." (Tr. 23).

In light of the arguably contradictory statements by plaintiff regarding her own activities, as well as the other factors noted by the ALJ, this court can not find the ALJ's decision not to give full credence to plaintiff's hearing testimony regarding her reliance on her mother for child care, chores and cooking was erroneous.  The ALJ was entitled to consider plaintiff's other statements that she did those activities in determining whether to believe plaintiff's subjective claims of disabling pain.  Plaintiff has not demonstrated error by the ALJ in making that credibility determination.

4.    **The ALJ did not erred by finding plaintiff's impairments of arthritis, anxiety and depression were non-severe**.

Plaintiff further argues that the ALJ erred in finding her arthritis, depression and anxiety were not severe impairments at step two of the sequential evaluation.  (Doc. 14 at 15-17). Plaintiff cites Social Security Ruling ("SSR") 96-3 for the proposition that any impairment is severe unless it is a "slight abnormality (or a combination of slight abnormalities) that has not more than a minimal effect on the ability to do basic work activities."  (Doc. 14 at 15).  Plaintiff argues that these three impairments were not properly considered to be non-severe in light of a) the nonexertional limitations the ALJ found and b) the lack of an RFC assessment by the consultative examiner ("CE").  (*Id*.).

It must be noted in this regard that plaintiff amended her claimed onset date at the hearing from January 1, 1992, to January 26, 2009.  (Tr. 16).  It is plaintiff's condition since the latter date, when she filed her claim for benefits, that is relevant to the disability determination.

Where a claimant has raised a "colorable claim of mental impairment, the social security regulations require the ALJ to complete a [Psychiatric Review Technique Form ("PRTF")] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." Moore v. Barnhart, 405 F.3d 1208, 1213–14 (11th Cir. 2005); see 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.' " Moore, 405 F.3d at 1213 (citing 20 C.F.R. § 404.1520a(c)(3–4)); 20 C.F.R. § 416.920a(c)(3–4)).

Applying the PRTF framework in analyzing plaintiff's mental impairments of depression and anxiety, the ALJ found that plaintiff suffered mild impairments in activities of daily living; social functioning; and concentration, persistence and pace. (Tr. 18-19).  The ALJ also found that plaintiff suffered no episodes of decompensation.  (Tr. 19).

Title 20, Code of Federal Regulations, section 416.920a(d)(1) provides:

(d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
  (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

Pursuant to section 416.920a(d)(1), the ALJ found that plaintiff's mental impairments were not severe.  (Tr. 18-19).   For purposes of this issue, the plaintiff's does not challenge the

ALJ's determination of the particular findings under the PRTF framework; plaintiff does not cite any fact in the record which would remove this case from the general application of that section.

In addition, plaintiff argues that the ALJ's determination that plaintiff's arthritis was not a 'severe' impairment was not supported by substantial evidence.  Plaintiff points to her testimony at the hearing as proof that she had more than a minimal impairment from her arthritis.  (Doc. 14 at 15-17). The ALJ relied on the report of Dr. Dixitkumar, the consultant examiner, who found that plaintiff had full strength and ranges of motion in her shoulders and arms, full strength in her wrists, and no weakness in her fingers or hands, and also found that she had no spinal abnormalities, normal and symmetrical muscle tone and strength, intact sensation, full dexterity without ataxia or tremor, and a coordinated and smooth gait.  (Tr. 18, *citing* Tr. 198-199).  The ALJ's holding that plaintiff's arthritis is not 'severe' is supported by substantial evidence, plaintiff's subjective testimony notwithstanding.

Conclusion

For the foregoing reasons, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED** and that judgment shall be entered for the defendant.

**DONE** this the   28th   day of September, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**